UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE BOUDREAU,

       Plaintiff,                              Case No. 07-10529

v.                                         Hon. Victoria A. Roberts

MICHAEL BOUCHARD, MICHAEL McCABE,
DAMON SHIELDS, JAMES A'HEARN,
individually and in their official capacities, and
COUNTY OF OAKLAND,

       Defendants.
_____

**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

      This matter is before the Court on: (1) Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, for Declaratory Ruling that Plaintiff's Comment to Secretary Did Not Constitute Sexual Harassment as a Matter of Law [Doc. 49]; and (2) Defendants' Motion for Summary Judgment [Doc. 50].  For the reasons stated, the Court **DENIES** both motions.

**II.    BACKGROUND**

      Plaintiff, Jane Boudreau, brought this gender discrimination action against her former employer, the County of Oakland, Oakland County Sheriff Michael Bouchard, Undersheriff Michael McCabe, Major Damon Shields, and Lieutenant James A'Hearn. The individual defendants were sued in their official and individual capacities.  Plaintiff voluntarily dismissed her claims against the individual defendants in answer to

1

Defendants' Motion for Summary Judgment.  Because only the claims against the County of Oakland remain, all subsequent references to Defendant pertain only to the County of Oakland.

Boudreau began employment with the Oakland County Sheriff's Office ("OSCO") as a Marine Deputy in May 1986.  She rose through the ranks, and in 1998 was named the first female OSCO Sergeant assigned to head the Court Services Unit of the Satellite Services Division.  In 2004, she was appointed to the Training Communications Division; her duties included the development, planning, scheduling and maintenance of all in-service and off-site law enforcement related instruction.        As a paramilitary organization, the OSCO follows a rank structure which starts with Deputy and goes up to Sergeant, Lieutenant, Captain, Major, Undersheriff and Sheriff.  Officers holding the rank of Sergeant and higher are considered command staff.  The Sheriff is elected, and is the organization's number one policy maker.  The Undersheriff is appointed by the Sheriff, and holds the number two position.

In January 2006, Defendant began a "line investigation" regarding Boudreau's performance. (A "line investigation" is an investigation that occurs within a division, as opposed to an internal investigation which is handled outside the division by higher levels of command).  Defendant says the investigation was prompted by a complaint from Boudreau's secretary, Liz Coleman.  During an interview with Boudreau's direct supervisor, Lieutenant Sue Sage, Coleman complained that Boudreau (1) routinely arrived late for work and left early; (2) drove the OSCO training unit vehicle for personal business, (3) talked excessively on her cell phone for personal calls and ignored work-related calls, and (4) was loud and disruptive, and used offensive and unprofessional

2

language.  Coleman also complained of an incident, four months earlier, in which Boudreau bragged about having sex with a deputy and attempted to "high-five" Coleman.

As a result of Coleman's allegations, Sergeant Gary Miller, a member of the OSCO Special Investigations Unit, and A'Hearn, began an internal investigation of Boudreau.  A'Hearn ordered Boudreau to give a compelled statement, so he could determine, among other things, whether she violated Oakland County's sexual harassment policy.

On February 8, 2006, Boudreau gave her first compelled statement.  A'Hearn and Miller questioned Boudreau about various performance-related issues.  They also asked Boudreau whether she described having sex with a deputy to Coleman. Boudreau said she was unwilling to talk about personal matters.  After being told that she must either answer the question or refuse to answer it, Boudreau responded "o.k. then, I'm refusing to answer that question."  Boudreau only admitted she had a conversation with Coleman that could have offended her.

Boudreau gave another compelled statement on February 17, 2006.  A'Hearn questioned Boudreau about outside employment, and again asked her multiple times whether she had a conversation with Coleman about having sex with a deputy. Boudreau said she could not remember the specifics of the conversation.  After repeated back and forth, she said "Well uhm, I guess I'm at that point then just put that I refused to answer the question . . ."  This response was deemed a refusal to answer. She was suspended, pending the outcome of the investigation.

At the conclusion of the investigation, Major Shields made a recommendation of

3

termination to Undersheriff McCabe, who in turn reported to Sheriff Bouchard.  Sheriff

Bouchard decided to terminate Boudreau based on these recommendations.  On March

8, 2006, Boudreau was notified of the OSCO's intent to terminate her for violations of

certain department rules and regulations:

> Rule 105: Integrity
> Rule 109: Unbecoming Conduct
> Rule 125: Compliance with Lawful Orders
> Rule 132:  Unsatisfactory Performance
> Rule 140: Absence from Duty
> Rule 143: Inattention to Duty
> Rule 155: Employment Outside of Department
> Rule 191: General Conduct on Duty

None of the violations included sexually harassing anyone, or creating a hostile work

environment.  The termination letter, signed by Shields, said the OSCO requested a

pre-termination hearing to show just cause for her dismissal.  Boudreau appeared with

counsel at the pre-termination hearing on March 9, 2009.  The hearing officer affirmed

the termination, effective March 14, 2009.

In accordance with the County's Merit System, Boudreau appealed her

termination.  Following a three-day hearing, the Personnel Appeal Board ("PAB") upheld

it.  Boudreau filed this action alleging Count I - gender discrimination in violation of Title

VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e *et seq.*; Count II - gender

discrimination in violation of the Michigan Elliott Larsen Civil Rights Act ("ELCRA"),

M.C.L. 37.2101 *et seq.*; Count III - wrongful discharge; and Court IV - slander and libel.

Boudreau subsequently withdrew her claims of wrongful discharge, slander and libel, as

well as her claims against the individual defendants in their official and individual

capacities.  Her federal and state gender discrimination claims remain against the

4

County of Oakland only.

Boudreau asks the Court to grant partial summary judgment in her favor on the issue of lack of cause for termination. She contends that termination for refusal to answer a question in a compelled statement, related to a single comment made to her secretary, could not be construed as sexual harassment as a matter of law. As such, she says any order to answer questions regarding that comment in a compelled statement, was illegal and not narrowly tailored to the scope of the investigation into her conduct. In the alternative, she asks the Court to issue a declaratory ruling that her comment to Coleman did not constitute sexual harassment as a matter of law.

Defendant asks the Court to grant summary judgment in its favor. The County say Boudreau cannot make out a *prima facie* case of gender discrimination because she cannot show she was treated differently than similarly situated male employees and cannot dispel the legitimate nondiscriminatory reason for her termination.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

5

The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 250-51.

## IV.   CASE LAW AND ANALYSIS

### A.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff contends that the alleged comment to Coleman could not form the basis for a hostile work environment claim, because it only occurred once and it was not based on Coleman's gender.  Accordingly, Plaintiff argues that Defendant had no right to require a compelled statement and order Plaintiff to respond to a question regarding the comment.  Plaintiff says she did not refuse to answer the question in a compelled statement, but rather answered, "I don't recall."  Plaintiff also says that whether her comment could be deemed sexual harassment is of critical importance to her claim of disparate treatment, because she was treated differently than males who were alleged to have violated the county's sexual harassment policy.

The County says it has the right to investigate complaints of sexual harassment, and whether or not Coleman's complaint made out a *prima facie* Title VII sexual harassment claim is irrelevant to its policy of investigating sexual harassment complaints.  Additionally, Defendant says that due to Oakland County's sexual

6

harassment policy and the law regarding vicarious liability of an employer, its investigation was proper.  The Court agrees.

The issue here is whether Defendant intentionally discriminated against Boudreau based on her gender. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ("[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").  Evidence of how Defendant treated males charged with committing the same or similar rule violations, is critical to Boudreau's claim.  Whether the comment makes out a Title VII sexual harassment case is irrelevant.

Moreover, although Defendant may have initiated the investigation due to alleged sexual harassment, the investigation had a broader scope and Boudreau was not disciplined or terminated for sexual harassment.  She was disciplined for other conduct which purportedly established eight separate rule violations.  While the veracity of Defendant's reason for initiating the sexual harassment investigation may be relevant on the issue of credibility, that determination is to be made by the trier of fact. See *Smith v. Chrysler Corp.,* 155 F.3d 799, 806-07 (6th Cir. 1998) (Under the Sixth Circuit's modified honest-belief approach, for an employer to avoid a finding that its claimed non-discriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.  Once the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce proof to the contrary.).

7

Accordingly, the Court **DENIES** Plaintiff's Motion for partial summary judgment on the issue of cause, and the Court declines to rule as a matter of law, that the comment to her secretary did not constitute sexual harassment.

### B.   Defendant's Motion for Summary Judgment

#### 1.   Overview

Boudreau's complaint alleges that Defendant intentionally discriminated against her based on her gender, and showed disparate treatment in terminating her for the same or similar conduct for which males were not terminated. Cmp. at ¶44.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  There are two principle methods of proving employment discrimination under Title VII: disparate treatment or disparate impact. *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005); *Int'l Broth. Of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) (recognizing disparate treatment and disparate impact methods of proof).  Proof of discriminatory motive is critical to disparate treatment claims. *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995).

Similarly, the ELCRA prohibits discrimination by an employer on the basis of sex, M.C.L. §37.2201(d), as Title VII does, and Michigan courts recognize that ELCRA claims generally are to be evaluated on summary disposition in the same manner as Title VII claims; both state and federal precedents are relevant. See *Harrison v. Olde*

8

*Financial Corp.*, 225 Mich. App. 601, 572 N.W.2d 679, 681 (Mich. Ct. App. 1997).

Traditionally, claims brought under § 2000e-2(a)(1) are categorized as either single-motive claims or mixed-motive claims. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir. 2008).  In a single-motive claim the plaintiff contends that "an illegitimate reason motivated the employment decision." *Id.*  In comparison, a plaintiff in a mixed-motive claim argues that "both legitimate and illegitimate reasons motivated the employer's decision." *Id.*  Plaintiff brings her gender discrimination claim under both single-motive and mixed-motive theories.

### 2. Single Motive Claim

A single motive claim, based on circumstantial evidence, is subject to the *McDonnell Douglas/Burdine* burden-shifting analysis. *Id.* at 391.  Under this framework, "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a *prima facie* case of discrimination." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).  If the plaintiff does so, "[t]he defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action." *Id.*  Finally, if the defendant succeeds in this task, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.*  "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L.Ed. 2d 407 (1993).

9

To demonstrate a *prima facie* case of gender discrimination, a plaintiff must show that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male employees for the same or similar conduct." *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)(quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992)).

Defendant does not contest that Boudreau is a member of a protected class, that she was qualified for her position, or that she was subject to an adverse employment action. Rather, Defendant says Boudreau cannot establish a *prima facie* case of gender discrimination under Title VII or ELCRA because she cannot show she was treated differently than similarly-situated male employees. Defendant says the court should only compare her to male command staff. Defendant also argues that Boudreau was terminated because she refused to answer a question during a compelled statement, without any consideration of her past work history or discipline. Thus, Defendant says the Court should reject her attempt to rely on employees who were disciplined for violating the same rules as her. Lastly, Defendant says its summaries of employee discipline refute Boudreau's claim of disparate treatment.

In response, Boudreau argues the Court should broadly construe "similarly situated" to include all deputies, regardless of rank. Boudreau relies on the testimony of Shields, Defendant's Fed. R. Civ. P. 30(b)(6) witness, that the OSCO Rules and Regulations ("Rules") apply equally to all officers. Because deputies and command officers must conduct themselves according to the same Rules, and are subject to termination by the Sheriff for violations, she says they are similarly situated for purposes

10

of this case.  The Court agrees.

To show that she was treated differently than similarly situated males for the same or similar conduct, Boudreau must show that "all relevant aspects" of her employment situation were "nearly identical" to those of the alleged similarly situated male employees. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).  To be "similarly situated," the male employees with whom Boudreau compares herself "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct, without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 906.  That standard is met here by the comparable male employees Boudreau presents.  All officers, regardless of rank, are subject to the OSCO Rules, and ultimately serve under the direction of the Undersheriff and Sheriff.  Additionally, command staff includes officers with higher rank than Boudreau.  Defendant does not explain why these officers would qualify as similarly situated, but those with lesser rank would not.

The Court also rejects Defendant's suggestion that the Court limit its analysis to employees who were terminated for refusing to answer a question in a compelled statement.  Boudreau's termination letter cites eight rule violations, including Rule 125 - Compliance with Lawful Orders.  Although Defendant says no employee, other than Boudreau, has ever refused to answer a question in a compelled statement, an important consideration is whether male employees suspected of sexual harassment or violations of these eight rules, were required to give a compelled statement.  Therefore, the Court finds it is appropriate to consider any male OSCO deputy or command officer who was disciplined for committing the same eight rule violations.

11

Boudreau presents evidence that four male deputies were convicted of crimes during their employment, and disciplined, but not terminated; those crimes included assault on a citizen; domestic violence; operating a motor vehicle while impaired and leaving the scene of a property damage accident; and, attempting to cash a counterfeit money order.  One officer wore a tether during his probation and continued his employment with OSCO during his probation, albeit in a temporary position outside the presence of inmates.

Boudreau also presents evidence of numerous deputies and command officers who violated the County's sexual harassment policy or committed the same rule violations charged against her; they were not terminated.  Those violations included (1) having sex with a female employee in the OSCO parking lot while on duty; (2) blowing and/or nibbling on the ears of female employees and touching them inappropriately; (3) using a county badge to pull over a female's car, obtain her personal information, and call her for personal reasons with a county cell phone; (4) attending a deputy's birthday party, which included a stripper performing sex acts; (5) golfing during a Homeland Security conference and making disparaging remarks about the conference, all of which was filmed by a Detroit television news crew; (6) repeatedly disobeying a superior's order not to take a patrol car to a spouse's bar and striking a deer in the patrol car after consuming six alcohol drinks; (7) giving combs to two inmates, asking them to make shanks (weapons) with them, and leaving the inmates alone to do so; and (8) using a county-owned vehicle to travel to the Windsor casino 44 times, including 25 times while on duty.

Boudreau presents evidence that Sergeant Miller, who conducted much of her

12

investigation and attended her compelled interviews, was himself accused of raping the

wife of a fellow deputy at his house, while he was investigating a domestic violence

complaint against her husband.  Miller claimed the sex was consensual, and received

no discipline.  Construing all of this evidence in the light most favorable to Boudreau,

the Court finds that she establishes a *prima facie* case of discrimination.

Defendant argues that even if Boudreau could establish a *prima facie* case, she

cannot dispute its legitimate, nondiscriminatory reason for her termination: refusal to

respond to the question regarding her conversation with Coleman.  Boudreau says this

reason is pretextual; she did not refuse to answer the question, but rather did not

answer to A'Hearn's liking, and male employees were not terminated for similar rule

violations.

A plaintiff may establish that an employer's explanation is not credible by

demonstrating "either (1) that the proferred reasons had no basis in fact, (2) that the

proferred reasons did not actually motivate his discharge, or (3) that they were

insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d

1078, 1084 (6th Cir. 1994).  Turning to the third *Manzer* factor, the Court believes that a

reasonable factfinder could find that Defendant's proferred reason was insufficient to

motivate Boudreau's discharge.  A plaintiff's showing under this factor "ordinarily[]

consists of evidence that other employees, particularly employees not in the protected

class, were not fired even though they engaged in substantially identical conduct to that

which the employer contends motivated its discharge of the plaintiff." *Id.*

First, as outlined above, Boudreau offers evidence that male officers were not

fired, and received lesser discipline, for committing similar or worse rule violations.

13

Second, Boudreau presents evidence that although she initially was unwilling to discuss the conversation, she was granted a second compelled interview where she answered the questions, just not to A'Hearn's satisfaction.  During that second interview, Boudreau said she was unable to remember specific details of the conversation, and after repeated questioning said "Well uhm, I guess I'm at that point then just put that I refused to answer the question . . .".  It is for the trier of fact to determine whether under the circumstances of the case, that constituted a "refusal" to answer.

Lastly, Boudreau presents evidence that Defendant was motivated not by concern over sexual harassment, but rather by a desire to investigate an alleged off-duty sexual relationship with a deputy.  Boudreau cites to the testimony of her former attorney, William Kucyk, that the first compelled interview was adjourned for a day after he objected to intended questioning about Boudreau's sex life and whether she had sex with a deputy.  She also cites to A'Hearn's admissions in a Personnel Appeal Board hearing that (1) at first, he was going to ask Boudreau during the compelled statement whether she had sex with the deputy, and (2) he thought of the question regarding the on-duty conversation with Coleman shortly before the first interview.  And, she presents interviews of Sergeant Stacy Green and Deputy Tina Aginaga, that A'Hearn asked them whether they knew if Boudreau slept with a deputy at the conference, but never asked about any on-duty conversation with Coleman.

The Court finds that Boudreau produced sufficient evidence from which a reasonable factfinder could find that Defendants' proffered explanation had either no basis in fact or was not the actual reason for Boudreau's termination. *Reeves*, 530 U.S. at 143.  Therefore, Defendant's Motion for Summary Judgment on Boudreau's single-

14

motive claim is **DENIED**.

### 3. Mixed-Motive Claim

Mixed-motive claims are not subject to the *McDonnell-Douglas* burden-shifting framework. *White*, 533 F.3d at 400.  To survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce direct or circumstantial evidence sufficient to show that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was a motivating factor for the adverse action. *Id.*  This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim. *Id.*  Moreover, it is irrelevant, for purposes of a summary judgment determination, whether the plaintiff presents direct or circumstantial evidence in support of the mixed-motive claim. *Id.* citing *Desert Palace v. Costa*, 539 U.S. 90, 93, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003).

Boudreau claims that Defendant treated males who committed the same or similar rule violations differently, and did not terminate them for rule violations.  As outlined above, some of these males committed multiple rule violations, including sexual harassment, and some remained employed after receiving criminal convictions.  In assessing whether an employee has demonstrated that an illegitimate reason was a motivating factor in an employer's adverse decision, the court should also consider evidence presented by the employer that the protected characteristic was not a motivating factor for its employment decision. *Murray Guard, Inc.*, 455 F.3d at 721.

15

Defendant says Boudreau was terminated solely for refusing to answer a question in a compelled statement.  However, this contention is belied by Boudreau's termination letter.

Defendant also presents summaries prepared by Dale Cunningham, Oakland County Director of Administrative Services, which are based upon a statistical analysis of past discipline of male and female employees.  Defendant submits this evidence to show that the OSCO does not treat female employees more harshly than male employees.  However, Cunningham testified that he did not know if the records were accurate, and the Court's review revealed that the summaries do not include all similarly situated evidence outlined by Plaintiff, e.g., Sergeant Miller.  The Court finds this evidence inadequate to refute Boudreau's claim that gender was a motivating factor.

Boudreau has offered sufficient circumstantial evidence to create a genuine issue of material fact of whether her gender was a motivating factor in Defendant's decision to terminate her.  Therefore, under the mixed-motive analysis, Defendant's Motion for Summary Judgment is **DENIED**.

## IV.    CONCLUSION

The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.  This case will proceed to trial on Counts I and II only, against the County of Oakland.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

16

Dated:  January 4, 2010

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 4, 2010. |
| s/Linda Vertriest |
| Deputy Clerk |